UNITED STATES DISTRICT OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTORIA NEZAJ, | Civil Action No. 22-cv-8494 |
| Plaintiff, | **COMPLAINT** |
| -against- | ***Jury Trial Demanded*** |
| PS450 BAR AND RESTAURANT, PARK SOUTH HOSPITALITY, CERUS HOSPITALITY CONSULTING LLC, VIG PARK, INC., TERRY BROOKS, MATTHEW WAGMAN, and DAVID MILLER, | |
| Defendants. | |

PLAINTIFF VICTORIA NEZAJ, by her attorney Goddard Law PLLC, whose offices are located at 39 Broadway, Suite 1540, New York, New York 10006, alleges, upon knowledge with respect to herself, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this action alleging that Defendants have violated, Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000 *et seq.*, The New York State Human Rights Law, The New York City Human Rights Law, the Federal Equal Pay Act and the New York State Equal Pay Act together with any and all other causes of action which can be reasonably inferred from the facts as set forth below, and seeks damages to redress the injuries Plaintiff has suffered as a result of being unequally paid, discriminated against, harassed, subjected to a  hostile work environment, and retaliated against by Defendants on the basis of her gender and sexual orientation.

2.      Plaintiff seeks declaratory relief, monetary relief, and punitive damages.

3.      Plaintiff demands a jury trial.

**JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES**

4.       Jurisdiction of the Court is proper under 42 U.S.C. § 2000 *et seq*., and 28 U.S.C. §§ 1331 and 1343.

5.       The Court has supplemental jurisdiction over the claims of Plaintiff brought under State law pursuant to 28 U.S.C. § 1367.

6.       Venue is proper in the District pursuant to 28 U.S.C. § 1391(b), as the acts complained of herein occurred within the Southern District of New York.

7.       All precedent to filing the instant action have been fulfilled. On or about December 9, 2020, Plaintiff filed a timely Complaint of Discrimination with the Equal Employment Opportunity Commission ("EEOC") which was cross-filed with the New York State Division of Human Rights. On or about July 11, 2022, the EEOC issued Plaintiff a Notice of Right to Sue. This action is brought within 90 days of Plaintiff's receipt of her Right to Sue Notice

**THE PARTIES**

8.       Plaintiff Victoria Nezaj (hereinafter "Plaintiff") is an LGBTQIA+ female citizen of the United States who currently resides in New Orleans, Louisiana.  Plaintiff was subjected to gender discrimination, sexual orientation discrimination, a hostile work environment, and retaliation that resulted, ultimately, in her termination from PS450 Bar and Restaurant (hereinafter "Defendant PS450").

9.       Plaintiff is and was, at all times relevant herein, Defendant PS450's "employee" within the meaning of all relevant Federal, State, and local laws.

10.       Upon information and belief, at all times herein, Defendant PS450 was and is a corporation registered in New York and permitted to do business in New York. Upon information and belief, Defendant PS450's headquarters are located at 450 Park Avenue South, New York, NY 10016.  At all times relevant herein, Plaintiff worked at this location.

11.     Upon information and belief, at all times herein, Defendant Park South Hospitality was and is a corporation registered in New York and permitted to do business in New York. Upon information and belief, Defendant Park South Hospitality's headquarters are located at 450 Park Avenue South, New York, New York 10016. At all times relevant herein, Plaintiff worked at this location.

12.     Upon information and belief, at all times herein, Defendant Cerus Hospitality Consulting, LLC was and is a corporation registered in New York and permitted to do business in New York. Upon information and belief, Defendant Cerus Hospitality's headquarters are located at 243 East 32nd Street, New York, New York 10016.

13.     Upon information and belief, at all times herein, Defendant Vig Park, Inc., was and is a corporation registered in New York and permitted to do business in New York. Upon information and belief, Defendant Vig Park's headquarters are located at 20 Park Avenue, Apt 10F, New York, New York 10016.

14.     Upon information and belief, Defendants Park South Hospitality, Cerus Hospitality Consulting, LLC, Vig Park, Inc., and Defendant PS450 Bar and Restaurant (hereinafter collectively referred to as the "Corporate Defendants") are joint employers.

15.     Upon information and belief, The Corporate Defendants are merely alter egos of each other. Specifically, the[y] share common ownership, and transfer funds between personal and corporate accounts, the owners of the Corporate Defendants use corporate funds and property for personal use or obligations; the corporations are undercapitalized, there is a lack of separate corporate formalities, the Corporate Defendants share common office space, ownership and employees.

16.     Defendant Terry Brooks (hereinafter "Director Brooks") was the Director of Hospitality and one of the highest-ranking individuals at Defendant PS450. Director Brooks was

Plaintiff's supervisor and/or had supervisory authority over Plaintiff and had the ability to hire, fire and/or affect the terms and conditions of Plaintiff's employment or to otherwise influence the decisionmaker of the same. Upon information and belief, Director Brooks managed, ran, and operated Defendant PS450 at all relevant times. At all times relevant, Director Brooks worked at Defendant PS450's offices at 450 Park Avenue South, New York, NY 10016.

17.    Defendant Matthew Wagman (hereinafter "CEO Wagman") was the Chief Executive Officer and one of the highest-ranking individuals at Defendant PS450. CEO Wagman was Plaintiff's supervisor and/or had supervisory authority over Plaintiff and had the ability to hire, fire and/or affect the terms and conditions of Plaintiff's employment or to otherwise influence the decisionmaker of the same. Upon information and belief, CEO Wagman managed, ran, and operated Defendant PS450. At all times relevant, CEO Wagman worked at Defendant PS450's offices at 450 Park Avenue South, New York, NY 10016.

18.    Defendant David Miller (hereinafter "Director Miller") was the Director of Operations and one of the highest-ranking individuals at Defendant PS450. Director Miller was Plaintiff's supervisor and/or had supervisory authority over Plaintiff and had the ability to hire, fire and/or affect the terms and conditions of Plaintiff's employment or to otherwise influence the decisionmaker of the same. Upon information and belief, Director Miller managed, ran, and operated Defendant PS450. At all times relevant, Director Miller worked at Defendant PS450's offices at 450 Park Avenue South, New York, NY 10016.

19.    Defendant PS450 is and was, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant Federal, State and local laws.

## FACTUAL BACKGROUND

### Plaintiff is Hired to Work at Defendant PS450

20.     In August of 2019, Plaintiff met with Director Brooks to interview for an Events Manager position.

21.     Plaintiff was qualified for the Events Manager position with Defendant PS450, as she had over fourteen years of hospitality experience and a bachelor's degree in business and marketing.

22.     In September of 2019, CEO Wagman, called Plaintiff to offer her a position at Defendant PS450. CEO Wagman informed Plaintiff that she was being hired for a "hybrid position," working as a daytime Events Manager on Tuesday, Wednesday, and Thursday, and as a Floor Manager on Friday and Saturday nights. CEO Wagman told Plaintiff that she was being hired for this hybrid role because of her diverse management, social media, and event planning experience.

### Plaintiff Discovers a Hostile and Discriminatory
### Work Environment at Defendant PS450

23.     Upon commencing her employment, it was immediately obvious to Plaintiff that the culture at Defendant PS450 was openly hostile towards women and LGBTQIA+ employees.

24.     Specifically, Director Brooks, along with other male managers, including the Director of Operations, Director Miller, created a discriminatory work environment by maintaining a fraternity-like "Boys Club" and consistently treating female and LGBTQIA+ employees less well than they treated straight male employees.

25.     Throughout the time that Plaintiff worked at Defendant PS450, most of the servers and bartenders were young females who were expected to "flirt" with the male bar patrons, while all of the managers, apart from Plaintiff, were male.

26.    The male managers at Defendant PS450 frequently made misogynistic and homophobic comments in front of the female staff. Director Brooks, in particular, routinely subjected female employees to inappropriate and lewd comments, as well as disrespectful and condescending treatment. The female employees regularly expressed disgust about the way that Director Brooks behaved.

27.    Upon information and belief, many employees at Defendant PS450 were appalled and disgusted by Director Brooks' behavior, and several female employees in the past had quit because of the hostility he subjected them to. Female servers and bartenders told Plaintiff that Director Brooks treated women offensively and, on separate occasions, two female servers disclosed to Plaintiff that they wanted to quit because Director Brooks bullied them and made them feel stupid. It was widely known and discussed that Director Brooks treated Defendant PS450's female staff disrespectfully.  It was also widely known and discussed that Director Brooks treated gay employees disrespectfully.

28.    In general, Director Brooks typically spoke to female and gay employees in a sarcastic and hostile tone but did not speak to straight male employees in the same manner.

29.    Director Brooks was extremely friendly with most of the male employees and managers, including a male bartender and manager named Bill Brooks, (hereinafter "Manager Brooks"), who frequently engaged in irresponsible workplace behavior such as being intoxicated at work and failing to complete his shift duties, behaviors which resulted in reprimand for female and gay employees but not for Manager Brooks.

30.    Director Brooks also treated another male manager, Luiggy Reyes, (hereinafter "Manager Reyes"), differently than he treated female and gay employees. Like Manager Brooks, Manager Reyes often failed to complete his shift duties and, in fact, was often "missing" when he

was supposed to be managing.  Upon information and belief, he was never disciplined by Director

Brooks.

31.     Upon information and belief, Plaintiff was hired to replace a gay, Hispanic male

employee, (hereinafter referred to as "Employee Doe"), who quit his position after working at

Defendant PS450 for less than a year. Upon information and belief, Employee Doe quit because

of the discriminatory and abusive work environment at Defendant PS450. Employee Doe told

Plaintiff that Director Brooks made him feel stupid and that he had to quit because he could not

stand the way that Director Brooks treated him or female employees.

**Plaintiff Objects to Defendant's Chauvinistic Dress Code**

32.     From the beginning it was obvious that Defendant PS450's male management

disliked Plaintiff's more androgynous style. Director Brooks made a point of warning Plaintiff that

"the last girl that had [her] job wore heels."

33.     Meanwhile, the female bartenders and servers were required to dress in a very

sexualized way. They were only allowed to wear boots at a certain length, shirts that were a certain

cut on the chest, leggings that were tight throughout or shorts and skirts that were at least two

inches above the knee.

34.     New hires were emailed uniform requirements together with links to clothing for

them to buy to satisfy the requirements, but male employees were allowed to wear regular clothing

like jeans and sneakers.

35.     When Plaintiff asked to wear sneakers while managing the floor, she was told no

and also told that she was supposed to "set an example" for "the girls." Plaintiff pointed out that

the male employees, including male managers, were allowed to wear sneakers and did not have a

dress code. When Defendants still pushed her to dress like the female staff members, she told them

that, because of her back problems, she needed to wear sneakers. Thereafter, she was begrudgingly

allowed to wear sneakers as long as she was not meeting with clients, but it was clear that Director Brooks was unhappy about it.

<u>**Director Brooks Continuously Harasses Plaintiff**</u>

36.     From the beginning of Plaintiff's employment, Director Brooks repeatedly and consistently engaged in inappropriate and discriminatory behavior towards her because of her gender.

37.     Upon information and belief, Director Brooks acted especially hostile towards Plaintiff because she was the only female in a managerial role. Director Brooks constantly attempted to intimidate Plaintiff and exert dominance over her.

38.     On multiple occasions, starting around October of 2019, Director Brooks touched Plaintiff on her back, shoulders, and knees, even after Plaintiff clearly explained that she did not like to be touched by other people.  Director Brooks laughed when Plaintiff stated that she didn't like to be touched, and thereafter touched her more often.

39.     Director Brooks openly mocked and disrespected Plaintiff in front of the employees she managed, causing her to feel increasingly uncomfortable in the workplace.

40.     Director Brooks persistently used a condescending, patronizing tone when speaking to Plaintiff, especially in front of the employees she managed. Director Brooks also routinely interrupted Plaintiff and dismissed all of her work suggestions and ideas.

41.      After she asked him not to touch her, Director Brooks acted extremely annoyed whenever she asked him for any guidance or information, even though she was a new employee simply eager to excel at her new job.

42.     After she asked him not to touch her, during conversations with Plaintiff, Director Brooks would roll his eyes or reply, "What is wrong with you?"

43.     On one occasion, during her first month working for Defendant PS450, Director Miller told Plaintiff that she should go introduce herself as Defendant PS450's Events Manager to a client who "always had parties" there. Plaintiff was excited that she was meeting a regular client for whom she would be planning events.

44.     When Plaintiff introduced herself as the new Events Manager to the client, as Director Miller instructed her to do, he was incredibly rude and misogynistic, asking her what she wanted to do for her career and if she was "also in school." Plaintiff responded that she had a bachelor's degree, and that event planning was her career.

45.      The client acted surprised that Plaintiff had a college degree and sarcastically clapped while saying, "Wow, good for you." Because Plaintiff knew that Defendant PS450's management had stepped in when a male employee had complained about a rude client, and because she did not want the client to treat other female employees badly, she reported the incident to Director Brooks and Director Miller. Speaking with them in the office, she specifically told them, "Wow, that client is an Olympic Level Misogynist." Director Brooks and Director Miller, to Plaintiff's frustration, laughed and asked what had happened. When she explained what had happened, they laughed again and said, "That sounds like him."

46.     Further, in response to Plaintiff's story, Director Brooks laughed and taunted her, saying "I wonder if there's anything misogynistic I could have you do before you leave [work] today." Director Miller, who was present at the time, also laughed at the story. Plaintiff was shocked that Defendant PS450's management team thought it was funny that a client would be so disrespectful and was even more concerned about Director Brooks' comments about having her do something misogynistic.

47.     Director Brooks also treated Plaintiff differently because of her sexual orientation.

48.     After mentioning that her ex-partner was a wedding planner, Director Brooks realized that Plaintiff had dated a woman, and after expressing a sort of bemused reaction, he thereafter routinely insisted that Plaintiff work with their only openly gay client because, "he likes you people better." He further insinuated that he did not like working with the gay client and engaged in stereotypes about the client, stating that he needed too much attention.

49.     On one occasion, the openly gay client came to Defendant PS450 with a man who performs as a drag queen, wanting to plan a drag show there.  Following the meeting with the client, Director Brooks expressed his discomfort with drag queens and the idea of a drag show and repeatedly rolled his eyes and distanced himself from the event.

50.     In addition, Director Brooks forced Plaintiff to do menial office tasks, such as taking phone messages for him. These tasks were not within the regular scope of Plaintiff's job, and it seemed that she was being asked to do them simply because of her gender.

51.     For example, once when Plaintiff asked Director Brooks a question, he simply said "phone" and pointed at a ringing telephone until Plaintiff answered it.  Director Brooks did not treat male employees in this manner, and his behavior made Plaintiff feel insignificant and stupid.

### Plaintiff Is Treated Worse Than the Male Managers

52.     After Plaintiff started working at Defendant PS450, she soon learned that her assigned schedule did not match the schedule she was given at the time of her hire. Upon information and belief, Defendant PS450 used her to provide male managers with time flexibility, requiring Plaintiff to fill in for them when they wanted time off.  Defendant PS450 showed little respect for Plaintiff's time and often changed her schedule to accommodate the male managers.

53.     In November of 2019, aware that all employees would be working extra hours during the holiday season, Plaintiff asked Director Brooks and Director Miller for her December work schedule in advance, so that she could plan her personal schedule for the month.

54.     Director Brooks and Director Miller reacted as if Plaintiff's request was unreasonable and condescendingly asked, "What exactly are you looking for?"  Plaintiff explained what she assumed to be obvious; that, like the other managers, she wanted to know her schedule so that she could make personal holiday plans.

55.     Upon information and belief, all of the other managers, who were all male, knew their holiday schedules well in advance.

56.     Despite Plaintiff's request, her schedule in December was repeatedly changed at the last minute.   Only Plaintiff's work schedule was subject to these last-minute changes. Upon information and belief, none of the male managers were made to work last minute.

**<u>Director Brooks' Offensive Behavior Continues</u>**

57.     As Plaintiff continued to work at Defendant PS450, she was consistently subject to Director Brooks' misogynistic and demeaning behavior.

58.     In November of 2019, Plaintiff asked Director Brooks if Defendant PS450 could supply feminine products and pain relievers for its female employees, since female servers regularly experienced cramps and headaches.

59.     Instead of replying to Plaintiff's request appropriately, Director Brooks went to Director Miller and mockingly said "Victoria wants to know if you want to buy tampons." Embarrassed, Plaintiff explained that she wanted Defendant PS450 to purchase pain relievers, not tampons, but Director Miller denied Plaintiff's request, and Plaintiff purchased pain relievers with her own money to supply to female employees on the floor.

60.     On another occasion in November of 2019, Plaintiff mentioned to Director Brooks that she was feeling nauseous. Director Brooks replied, "Maybe you should pee on a stick," and walked out of the room.  Plaintiff was shocked and humiliated.

61.     The next morning, Director Brooks again asked Plaintiff if she had "peed on a stick."  Plaintiff again felt embarrassed and humiliated.

62.     Plaintiff told Director Brooks that she was not pregnant and that her pregnancy status was not his business.

### Plaintiff Reports Director Brooks Harassment to CEO Wagman who Dismisses Her Complaint

63.     By December of 2019, following the "pee on a stick" comment, Plaintiff felt that she could not tolerate Director Brooks' relentless harassment any longer and decided to report the discrimination in the hopes that it would end.

64.     On or around December 11, 2019, Plaintiff spoke to CEO Wagman regarding Director Brooks. Plaintiff told CEO Wagman that Director Brooks made her feel uncomfortable and humiliated with his inappropriate behavior and condescending comments. She specifically told him about the "pee on a stick" comment and how he yelled "phone" at her and pointed at the phone.

65.     CEO Wagman's response to Plaintiff's complaint was to say that Director Brooks can be "crass" and then inexplicably stated that he "wears his heart on his sleeve."

66.     Plaintiff responded by asking, "How would you feel if your wife's boss asked her to 'pee on a stick' or barked 'phone' at her?"  CEO Wagman, growing obviously annoyed, replied, "Yeah, I get that, that's crass. But he wears his heart on his sleeve."

67.     Plaintiff responded incredulously, "I must not be the first girl who has reported this to you."  CEO Wagman responded, "Actually you are," and he became extremely tense and crossed his arms. To her shock, CEO Wagman then began attacking her performance.  Specifically, he complained that she always wanted to leave at her scheduled time off.

68.      Plaintiff told CEO Wagman that if anyone had an issue with her job performance, it was the first she was hearing of it, and she wished to be given direction on how to improve.

69.     Since she feared that Director Brooks' would retaliate against her if he knew that she had reported him, and because CEO Wagman had reacted so negatively to her report, Plaintiff asked CEO Wagman not to mention to Director Brooks that she had complained about his behavior to him.

**Director Brooks' Behavior Worsens**

70.     Almost immediately after Plaintiff reported Director Brooks' behavior to CEO Wagman, Director Brooks began retaliating against her. Upon information and belief, he was aware of Plaintiff's complaints against him.

71.     Director Brooks became extremely cold and distant and was clearly, openly and obviously enraged at Plaintiff.

72.     Plaintiff was immediately and inexplicably left out of hiring interviews, which were, upon information and belief, purposefully held thereafter when she was not at work. Among these was an interview for the person who was supposed to assist her.

73.     On or around December 11, 2019, soon after Plaintiff had made her complaint, Director Brooks and Director Miller reprimanded Plaintiff for not working extra hours, stating that they did not like that she "left when she was scheduled to leave." Plaintiff's regular hours were from 11am to 8pm, and she usually left work on time at 8pm, but suddenly, Defendant PS450 made it clear she was expected to stay much longer.

74.     After being reprimanded by Director Brooks and Director Miller, Plaintiff felt that she had to stay at work later than scheduled, or else she would lose her job, and always checked to see if Director Brooks or Director Miller needed anything from her before she left for the day, even if it required her to stay past her scheduled shift.

75.     After she reported him to CEO Wagman, Director Brooks also tried to create a record against Plaintiff by blaming her for other people's mistakes.

76.     For example, in December, after Director Brooks forgot to provide a list of food platter selections for an event he was managing, he blamed Plaintiff and said that it was her fault, even though she was not involved in the preparation or planning for that event.

### Director Brooks Continues to Engage in Offensive, Hostile Behavior

77.     The only response to Plaintiff's complaints to CEO Wagman was retaliation from Director Brooks.  Otherwise, there was no change in his behavior at all and he continued to regularly make offensive comments and jokes, targeting Plaintiff and other female and gay employees. He continued to treat female and gay employees less well than male and straight employees.  Female and gay employees continued to be treated in a hostile and demeaning manner by Director Brooks.

78.     On one occasion, in December of 2019, Director Brooks told a story at work about a female employee at his last job whom he claimed could not do simple math. Director Brooks said that he had to "put it into terms that she could understand" by asking, "if you sleep with three guys a week for four weeks, how many guys have you slept with by the end of the month?"

79.     Plaintiff was disgusted by Director Brooks' story and did not respond.  At the time, there were a few other female employees around who were also appalled and did not respond.

80.     On another occasion, in December of 2019, after Plaintiff brought up Saint Patrick's Day, Director Brooks gleefully said that all he knew was that March 14th was "National Blow Job and a Steak Day," and that he "make[s] sure [his] wife knows what day that is."  Director Brooks then leaned over Plaintiff's shoulder to do searches about "Blow Job and a Steak Day" on her laptop, thereby invading her personal space and causing Plaintiff to feel extremely uncomfortable.

81.     On yet another occasion, in January of 2020, Director Brooks told a story in front of Plaintiff about a time in Las Vegas when he was playing cards at a table with a woman.  The

punchline of Director Brooks' story was that the woman had commented "If you had a 12-inch dick, would you split that?"

82.    Director Brooks also made offensive comments about clients who were LGBTQIA+. About one client, Director Brooks commented "Why is [this client] calling me so early?  Shouldn't he be biting a pillow right now?" Plaintiff and another female employee were present when Director Brooks made this comment.

83.    In or around January of 2020, another female server disclosed to Plaintiff that she was afraid to tell Director Brooks that she was pregnant because she feared that he would fire her.

84.    Around January or February of 2020, a female bartender walked out because she could no longer tolerate Director Brooks' misogynistic and offensive behavior.

<b><u>Plaintiff is Further Retaliated Against</u></b>

85.    Through January and February of 2020, Director Brooks' behavior continued to make Plaintiff feel stupid and insignificant. He constantly made condescending remarks to intimidate her, barked orders at her, refused to interact with her about legitimate work issues and regularly told her to "do as she was told" when she tried to discuss customer issues or general workplace business issues with him.  He also treated her like his personal assistant and receptionist.

86.    During a meeting with Director Brooks in January of 2020, Director Brooks continued to cut Plaintiff off while she was trying to speak, spoke over her and called all of her ideas "bad" and "useless."  After Director Brooks had left the room, the event assistant who was in the room with them asked Plaintiff why Director Brooks treated her so poorly.

87.    Yet another time, in January or February of 2020, Director Brooks forced Plaintiff to have a table of guests move, since the table was reserved for later.  Plaintiff explained that it might make sense to have those guests stay, since the other guests were not arriving until much later, but Director Brooks insisted on moving them and rudely rejected her opinion.  After Director

Brooks walked away, a male manager named Ryan, who clearly agreed with Plaintiff that it did not make sense to move the guests, directed Plaintiff not to move the guests.

88.    Upon information and belief, other employees noticed Director Brooks' persistently abusive treatment of Plaintiff.  Plaintiff was asked by coworkers why Director Brooks was so hostile towards her, and she felt embarrassed to be humiliated in front of them.

### Plaintiff is Excluded from Defendant PS450's Holiday Party

89.    On or around February 4, 2020, Plaintiff learned about a staff holiday party that every employee had been invited to except for her and which was supposed to take place the following Sunday.  When bartender asked her if she was going, she revealed that she had not heard anything about it. Another employee then shared the email she had received with the party information and invitation.  Plaintiff saw that she appeared to be the only employee not invited.

90.    It was especially odd to Plaintiff that she did not know about the holiday staff party given that she was Defendant PS450's Events Manager and would normally have been involved in the planning of the party.  Upon information and belief, Plaintiff had been purposefully excluded from Defendant PS450's holiday party in retaliation for complaining about the discriminatory way in which Director Brooks treated her.

91.    On or around February 5, 2020, Director Brooks left for a one-week vacation without mentioning the trip beforehand to Plaintiff. Upon information and belief, this was retaliatory behavior, given that Plaintiff worked closely with Director Brooks and would need to pick up his work while he was away.  Upon information and belief, Director Brooks told the event assistant to forward all of his events and inquiries to Plaintiff while he was gone.

**Plaintiff is Terminated**

92.     On or around February 14, 2020, Plaintiff reported to work as usual. About forty minutes later, CEO Wagman arrived and asked Plaintiff if she could speak with him and Director Miller.  Plaintiff agreed and took a seat at a back booth with CEO Wagman and Director Miller.

93.     After he was seated with Plaintiff, CEO Wagman informed Plaintiff that she was being terminated from her position at Defendant PS450.  CEO Wagman explained that Defendant PS450 "could not afford" to keep paying Plaintiff's salary.  Director Miller told Plaintiff that he was sorry to let her go and thanked her for her service.

94.     Upon information and belief, Defendant PS450 terminated Plaintiff in retaliation for her complaint about the hostile work environment, and in particular for complaining about Director Brooks' offensive and discriminatory behavior.  Plaintiff, the only female manager, was the only manager fired.

95.     Throughout her employment at Defendant PS450, Plaintiff was subjected to extreme and persistent harassment, abuse, and intimidation, and was made to feel as if her opinions did not matter, because she was a woman.  Director Brooks constantly humiliated Plaintiff and shut down her ideas, which he did not do to male managers and employees, a practice that only worsened after Plaintiff had complained about his behavior. Furthermore, Director Brooks continued to foster an extremely hostile work environment at Defendant PS450 by subjecting employees to a constant stream of misogynistic and offensive comments.

96.     As a result of the abusive treatment by Director Brooks, Plaintiff suffered severe stress, anxiety, and mental and physical anguish, resulting in her losing fifteen pounds and needing to speak to a therapist about her abusive work environment.

## AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION

*(Gender and Sexual Orientation Discrimination in Violation of Title VII
(as against the Corporate Defendants only), the New York City Human
Rights Law and the New York State Human Rights Law)*

97.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

98.     Defendants have discriminated against Plaintiff in violation of Title VII, the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL") by subjecting her to different treatment on the basis of her gender and sexual orientation.  Plaintiff has suffered both disparate impact and disparate treatment as a result of Defendants' wrongful conduct.

99.     Defendants have discriminated against Plaintiff by treating her differently from and less preferably than similarly situated straight, cisgender males and by subjecting her to disparate terms and conditions of employment, and other forms of discrimination on the basis her gender and sexual orientation in violation of Title VII, the NYCHRL and the NYSHRL.

100.    Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

101.    As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income including, but not limited to wages, social security, and other benefits due her.

102.    Additionally, Plaintiff has suffered the indignity of discrimination, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress and physical illness.

103.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful

embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

104.    By reason of Defendants' discrimination, Plaintiff is entitled to all remedies available for violations of Title VII, and, as against all Defendants, the NYCHRL and the NYSHRL.

105.    As a result of Defendants' violation of Title VII, the NYCHRL and the NYSHRL, Plaintiff has been damaged in the sum of no less than $2,500,000.

<u>**AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION**</u>
*(Retaliation Under Title VII (as against the*
*Corporate Defendants only), NYCHRL and NYSHRL)*

106.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

107.    Plaintiff was an employee of the Corporate Defendants and is protected by Title VII, the NYCHRL, and the NYSHRL from retaliation and retaliatory discharge.

108.    Plaintiff complained to Defendants about the gender and sexual orientation discrimination she was subjected to during her employment with the Corporate Defendants.

109.    Plaintiff's complaints were ignored and discouraged by Defendants in violation of Title VII, the NYCHRL and the NYSHRL.

110.    Plaintiff notified Defendants PS450's Management of the gender and sexual orientation discrimination she was subjected to and protested the harassment.

111.    Plaintiff's protest to Defendants, about the gender and sexual orientation discrimination she was subjected to during her employment with Defendants, was a protected activity under Title VII, the NYCHRL and the NYSHRL.

112.    Defendants, unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff complaining about the incidents of gender and sexual orientation discrimination.

113.    Because she protested Defendants' unlawful behavior, Plaintiff was subjected to retaliation.

114.    The retaliation substantially interfered with the employment of Plaintiff and created an intimidating, offensive, and hostile work environment in violation of Title VII, the NYCHRL and the NYSHRL.

115.     Defendants knew or should have known about the retaliation and the affect it had on Plaintiff's employment, but failed to take any action to stop the retaliatory conduct.

116.    As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has lost and will continue to lose substantial income including, but not limited to wages, social security, and other benefits due her.

117.    Additionally, Plaintiff has suffered the indignity of discrimination and retaliation, the invasion of her rights to be free from discrimination, and great humiliation, which has manifested in serious emotional stress and physical illness.

118.    As a further direct and proximate result of said unlawful employment practices and retaliation, Plaintiff has suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself and her family, harm to her employability and earning capacity, painful embarrassment among her family, friends, and co-workers, damage to her good reputation, disruption of her personal life, and the loss of enjoyment of the ordinary pleasures of everyday life.

119.    By reason of Defendants' discriminatory retaliation, Plaintiff is entitled to all remedies available for violations of Title VII, and, as against all Defendants, the NYCHRL NYSHRL.

120.     As a result of Defendants' violation of Title VII, the NYCHRL and the NYSHRL, Plaintiff has been damaged in the sum of no less than $2,500,000.

**AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION**
*(Unequal Pay in Violation of Article 6 of the New York State
Equal Pay Act Labor Law § 190, et seq.)*

121.     Plaintiff repeats and realleges the allegations contained in the paragraphs above as if separately set forth here.

122.     The acts and practices of PS450 Defendants constitutes discrimination against Plaintiff in violation of the New York State Equal Pay Act by unlawfully paying female employees less than male employees for equal work.

123.     At all relevant times, Plaintiff was an employee and PS450 Defendants were an employer within the meaning of the New York State Equal Pay Act.

124.     The acts and practices of PS450 Defendants constitute discrimination against Plaintiff in violation of the New York State Equal Pay Act by unlawfully paying female employees less than male employees for equal work.

125.     PS450 Defendants were aware of complaints and requests for investigation made by Plaintiff concerning the unfair pay practices but did not rectify or investigate its unlawful pay practices.

126.     Plaintiff's violations of the New York State Equal Pay Act were willful, entitling plaintiff to liquidated damages.


**AND AS FOR A FOURTH CAUSE OF ACTION**
*(Aiding and Abetting Discrimination in Violation of the New York
State Human Rights Law Against the Individual Defendants)*

127.     Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

128.    Defendants acted to aid and abet the discrimination and retaliation complained of herein, in violation of the NYSHRL.

129.    As a direct and proximate result of Defendants' discrimination, Plaintiff has suffered and continues to suffer damages including loss of pay and benefits and severe mental anguish and emotional distress.

130.    Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's state-law protected rights, entitling Plaintiff to punitive damages.

131.    Plaintiff will continue to suffer these damages and until the Court grants all of the relief which she is entitled that is requested herein.

132.    By reason of Defendants' discrimination, Plaintiff is entitled to all remedies available for these violations of law.

### AS AND FOR THE FIFTH CAUSE OF ACTION
*(Unequal Pay in Violation of the Equal Pay Act)*

133.    Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

134.    At all times relevant to this action, Plaintiff was employed by Defendant PS450 within the meaning of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.*, as amended to include the Equal Pay Act, 29 U.S.C. § 206(d) *et seq.*

135.    At all times relevant to this action, the Corporate Defendants and the individual Defendants were employers within the meaning of the FLSA and the Equal Pay Act.

136.    The acts, practices and policies of Defendants, as set forth above, constitute discrimination against Plaintiff, in violation of the FLSA and the Equal Pay Act, by unlawfully paying female employees less than male employees for equal work. Upon information and belief, Defendants were aware of complaints made by Plaintiff concerning Defendants' unfair pay practices but did not rectify or investigate its unlawful pay practices.

137.     Defendants' violations of the Equal Pay Act were willful and/or reckless, entitling plaintiff to the three-year statute of limitations and liquidated damages available under the FLSA and the Equal Pay Act.

## **PRAYER FOR RELIEF**

**WHEREFORE,** for the foregoing reasons, it is specifically requested that this Court grant Plaintiff judgment as follows:

(i)     On Plaintiff's First Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,500,000.00.

(ii)     On Plaintiff's Second Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,500,000.00.

(iii)     On Plaintiff's Third Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,500,000.00.

(iv)     On Plaintiff's Fourth Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,500,000.00.

(v)     On Plaintiff's Fifth Cause of Action, awarding Plaintiff compensatory and other damages, including punitive damages in an amount to be determined at trial but in any case, no less than $2,500,000.00.

(vi)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, together with such other and further relief as this court deems equitable, proper, and just.

Dated:  New York, New York
        October 5, 2022

Respectfully submitted,

GODDARD LAW PLLC
*Attorney for Plaintiff*

By:  */s/ Megan S. Goddard*

        Megan S. Goddard, Esq.
        39 Broadway, Suite 1540
        New York, NY 10006
        Ofc: 646-504-8363
        Fax: 212-473-8705
        Megan@goddardlawnyc.com